**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

_____
                              )
D.L., by and through his next friend,  )
Lisa Lampkin; on behalf of himself and  )
all persons similarly situated; and D.B., by and  )
through his next friend, Tara Bostick,  )
                              )
          Plaintiffs,  )
                              )
v.                               )     Case No._____
                              )
JAMES SLATTERY, President of Youth Services  )
International; FRANK PETERMAN, JR., in his  )
official capacity as Secretary of the Florida  )
Department of Juvenile Justice; CRAIG  )
FERGUSON, in his official and individual  )
capacities as Facility Administrator of YSI  )
Thompson Academy; Mr. AUGUSTINE in his  )
official and individual capacities as a youth  )
counselor at Thompson Academy; and Mr.  )
PRESLEY in his official and individual capacities  )
as a youth counselor at Thompson Academy,  )
                              )
          Defendants.  )
_____)

## COMPLAINT

1.      This is a civil rights class action filed pursuant to 42 U.S.C. § 1983 to protect the rights of

children imprisoned at Thompson Academy, a private, for-profit juvenile prison owned by Youth

Services International ("YSI") and operated on behalf of the Florida Department of Juvenile

Justice ("DJJ").  Youth confined at Thompson Academy describe the facility as a frightening and

violent place where they are subject to abusive and unconstitutional conditions, including

repeated physical and sexual abuse perpetrated by guards, which is ignored and encouraged

through the negligence of staff, supervisors, the facility administrator, and officials at DJJ.  YSI

ensures its ability to abuse children with impunity by denying youth access to lawyers who could help protect them.

2.      YSI facilities are operated at a high cost to Florida taxpayers, who pay over $74 million for these institutions.  Despite this price tag, Florida's children regularly endure unspeakable abuses at the hands of YSI staff and the state officials who allow YSI to operate in violation of state and federal law.

3.      Plaintiff D.L. and the class he seeks to represent languish in hot and moldy living units that lack air conditioning; and children with asthma are forced to evacuate to other living units where they must sleep on the floor.  YSI staff at Thompson Academy subject youth to brutal and excessive physical force on a regular basis to intimidate and terrorize youth: children are choked and slammed head first into concrete walls, their arms and fingers are bent back and twisted to inflict pain for infractions as minor as failing to follow an order to stand up.  Plaintiff D.B. endured two harrowing sexual assaults at the hands of a YSI employee.  The Facility Administrator ignored his plea for assistance and exposed D.B. and possibly other youth at Thompson to further sexual abuse by the same staff person.  This abuse flourishes against the backdrop of YSI and DJJ's policy and practice barring children from accessing both the courts and lawyers who could help them challenge their conditions of confinement.

4.      Youth Services International's reputation is marred by egregious conditions in its facilities in other states.  Children have reported repeated sexual abuse and exploitation by staff, appalling physical and emotional abuse, and a shocking failure by YSI to respond to these allegations and protect the children entrusted to their care.  One child even died while in the custody of a YSI facility in Iowa.  *See Pipe vs. Hubbard*, 2010 U.S. Dist. LEXIS 55772 (2010) (Plaintiff detainee claimed he was sexually assaulted by a correctional officer employed by YSI

and YSI failed to take any action); *Brown v. Youth Services International*, 89 F. Supp. 2d 1095 (2000) (Youth incarcerated at a YSI detention facility sued for repeated sexual abuse, molestation and exploitation committed by a YSI counselor); *Burton v. Youth Services International*, 176 F.R.D. 517 (1997) (Plaintiff detainee alleged that Defendant YSI failed to address his concerns about his assigned roommate, who later raped him).  Similarly, a counselor at Forest Ridge Youth Services, a YSI operated facility in Iowa, plead guilty to charges of sexually exploiting a female resident of the facility.  *See* http://sparkaction.org/node/32921. Forest Ridge Youth Services was subject to additional scrutiny when the Department of Health Services began an investigation into charges that youth were frequently physically and emotionally abused by inexperienced staff.  *Id*.  The investigation found "appalling" conditions suffered by youth detainees.  *Id*.  In 1995, a female detainee at Forest Ridge Youth Services, died in route to the hospital after complaining to staff about repeated chest and leg pain.  *Id*.  Her initial weight, 145 pounds, dropped to less than 100 pounds and despite requests from her mother to hospitalize her, she remained at the detention facility until she collapsed and was transported to a nearby emergency room.  *Id*.  There, her injuries were deemed too severe to be treated locally and she died during helicopter transport to a larger hospital.  *Id*.  In spite of this reputation, Florida's Department of Juvenile Justice has chosen to contract with YSI to provide care and supervision to hundreds of vulnerable youth.

5.      Plaintiff D.L., individually and on behalf of the Plaintiff class, a class composed of all youth who are now confined or who will in the future be confined at Thompson Academy, seeks declaratory, preliminary, and permanent injunctive relief requiring that the Defendants cease their unlawful policies and practices.  On behalf of himself, Plaintiff D.B. seeks declaratory relief, compensatory, and punitive damages.

## PARTIES

6.      Plaintiff D.L. is a 16-year-old boy currently incarcerated in the Falcon Unit at Thompson Academy.  On behalf of himself and all similarly situated children, he brings this action by and through his next friend and mother, Lisa Lampkin.  D.L. has been confined at Thompson Academy since February 16, 2010, where he has endured brutal physical assaults from adult staff members, intimidation, harassment and retaliation for speaking with his attorneys, and has been denied his right to see his attorneys.  The abuse D.L. has suffered at the hands of YSI staff is typical of the experiences of many children confined to the facility who similarly describe Thompson Academy as violent and abusive.

7.      Plaintiff D.B. is a 15-year-old boy who was incarcerated in the Eagle Unit at Thompson Academy until Friday, October 1, 2010.  D.B. endured two sexual assaults by a YSI employee during his incarceration at Thompson Academy.  D.B. brings this action by and through his next friend and mother, Tara Bostick.

8.      Defendant James Slattery is the President of Youth Services International, a private, for-profit corporation that contracts with DJJ to operate nine juvenile correctional facilities, including Thompson Academy.  Under the terms of the contract executed by DJJ and YSI, YSI is responsible for overseeing the daily operations at Thompson Academy and operating the facility in compliance with state and federal law.

9.      Defendant Frank Peterman, Jr. is Secretary of the Florida Department of Juvenile Justice and as such is responsible for "planning, coordinating, and managing the delivery of all programs and services within the juvenile justice continuum," including "detention centers and related programs and facilities" and "delinquency institutions provided or funded by the department." Fla. Stat. § 20.316(1)(b) (2010).  Further, the Secretary of DJJ shall "ensure that juvenile justice

continuum programs and services are implemented according to legislative intent, state and federal laws, rules, and regulations…" and "coordinate staff development and training." Fla. Stat. § 20.316(1)(c)(1),(4) (2010). Frank Peterman, Jr. is sued in his official capacity as Secretary of DJJ.

10.     Defendant Dr. Craig Ferguson is the Facility Administrator of Thompson Academy and is employed by YSI. As Director of Thompson Academy, Defendant Ferguson exercises administrative control of and has responsibility for Thompson Academy. He is responsible for the day-to-day operations of the facility and supervises all conditions and practices therein. Defendant Ferguson directly supervises Thompson Academy staff and is responsible for the implementation of policy and procedure at Thompson Academy. Dr. Ferguson is sued in his individual and official capacities.

11.     Defendant Augustine is an employee of YSI and a youth counselor at Thompson Academy. In that capacity, he is directly responsible for the safety and care of children, maintaining order and security, providing secure transportation, assisting in therapy treatments, and maintaining required logs, records and reports. Defendant Augustine is sued in his individual and official capacities. Defendant Augustine's first name is unknown to Plaintiffs at this time.

12.     Defendant Presley is an employee of YSI and a youth counselor at Thompson Academy. In that capacity, he is directly responsible for the safety and care of children, maintaining order and security, providing secure transportation, assisting in therapy treatments, and maintaining required logs, records and reports. Defendant Presley is sued in his individual and official capacities. Defendant Presley's first name is unknown to Plaintiffs at this time.

**JURISDICTION AND VENUE**

13.     The Plaintiffs' cause of action arises under the First, Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

14.     Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and § 1343(a).  This Court has jurisdiction under 28 U.S.C. § 1367 over Plaintiff D.B.'s state law claims, as they are so related to the federal claims in this action that they form a part of the same case or controversy under the Constitution and laws of the United States.

15.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a "substantial part of the events or omissions giving rise to the claims[s] occurred" in this district.

## CLASS ACTION ALLEGATIONS

16.     Plaintiff D.L. brings this suit on his own behalf and on behalf of all children who are, or will in the future be, confined at Thompson Academy.

17.     The class is so numerous that joinder of all members is impractical.  Thompson Academy can house over 150 youth, and over 180 male youth were released from Thompson Academy in fiscal year 2008.  Youth remain in Thompson Academy for varying lengths of time and the population changes on a daily basis.  The class also includes future members whose names are not known pursuant to Fed. R. Civ. P. 23(a)(1).

18.     There are questions of law and fact common to all class members, including but not limited to the Defendants' failure to provide class members with constitutionally safe and humane conditions of confinement, protect class members from harm and excessive force, Defendants' deprivation of class members' right to meaningful, effective and adequate access to the courts, and Defendants' retaliation against class members for exercising their First Amendment rights.  Fed. R. Civ. P. 23(a)(2).

19.     The claims of D.L. are typical of the claims of the class because the policies, practices

and customs challenged in this Complaint apply with equal force to Plaintiff D.L. and the other

youth confined at Thompson Academy at this time and in the future.  Fed. R. Civ. P. 23(a)(3).

20.     Plaintiff D.L. will fairly and adequately protect the interests of the class.  He possesses a

strong personal interest in the subject matter of the lawsuit and is represented by experienced

counsel with expertise in class action litigation on behalf of children in federal court.  Counsel

has the legal knowledge and resources to fairly and adequately represent the interests of all class

members in this action.  Fed. R. Civ. P. 23(a)(4).

21.     The Defendants have acted and refused to act on grounds generally applicable to the class

in that Defendants' policies and practices of violating Plaintiff D.L.'s constitutional rights have

affected all class members.  Accordingly, final injunctive and declaratory relief is appropriate to

the class as a whole.  Fed. R. Civ. P. 23(b)(2).

## STATEMENT OF FACTS

22.     Thompson Academy is a "non-secure" 154-bed, "moderate risk" residential facility for

male youth from ages 13 to 18 years-old.  "Moderate risk" facilities are generally for those youth

who have committed property offenses and their "offending is characterized by frequent and

repeated law violations" as opposed to public safety concerns.  *See*

http://www.djj.state.fl.us/Residential/restrictiveness.html#Moderate.  Program models for

moderate risk youth include "halfway houses, wilderness camps and youth academies."  *Id*.

23.     Thompson Academy is operated by YSI, a for-profit, correctional corporation.  YSI is

under contract with DJJ to operate Thompson Academy.  DJJ and YSI are responsible for

ensuring that Thompson Academy operates its program in compliance with state and federal law.

Despite this requirement, Defendant DJJ has allowed, and in some cases instructed YSI and

Thompson Academy to violate the rights of children by subjecting them to harmful and unconstitutional conditions and denying children their right to access the courts to challenge their conditions of confinement.

24.     Defendant Peterman and the Florida Department of Juvenile Justice are charged under Florida statute with monitoring privately contracted facilities such as Thompson Academy, to ensure compliance with state and federal laws, state administrative policies, DJJ policies and procedures, and contract terms and conditions.  DJJ's monitors are required to review all of YSI and Thompson Academy's records, conduct announced and unannounced visits, observe the facility's daily operations, and conduct detailed private interviews with youth.  *See* CONTRACT MANAGEMENT AND PROGRAM MONITORING GUIDELINES, FLA. DEPT. OF JUV. JUSTICE (2009), *available at* http://www.djj.state.fl.us/policies_procedures/General_Counsel/Contracts/Contract_Monitoring_ Guidelines_Res-Prob-Dec09.pdf.

25.     Defendant YSI is required to report any incident that "has the potential to disrupt the normal operations of the facility or program [or] may bring public attention to the department." *See* Fla. Dept. of Juv. Justice Policy § 8000, *available at* http://www.djj.state.fl.us/policies_procedures/Inspector_General/CCC_Policy_rev12-06.pdf.

26.     DJJ's oversight and monitoring responsibilities, combined with YSI and Thompson Academy's reporting requirements ensures that Defendants Peterman and Slattery have direct and substantial knowledge of the unconstitutional and unlawful policies, practices, and conditions that harm youth confined at Thompson Academy.  Despite this knowledge, Defendants Peterman and Slattery have failed to take action to prevent the violation of Plaintiff's constitutional rights.

**Violation of Plaintiff D.L.'s Right to Protection from Harm and Access to Courts**

27.     Through the Broward County Public Defender, several parents requested that SPLC staff

visit their children because they were concerned about conditions at Thompson Academy.

Beginning on or about September 8, 2010, staff from the Southern Poverty Law Center

("SPLC"), in association with Florida attorney Matthew Farmer, began conducting legal visits at

Thompson Academy.  During these visits, several youth, including both named Plaintiffs, signed

attorney representation notices with SPLC, and requested additional meetings with SPLC to

discuss conditions at Thompson Academy.

28.     Shortly after SPLC started visiting clients at Thompson Academy, some of the staff,

including Defendant Ferguson, began questioning youth about their confidential meetings with

SPLC.  Staff, including Defendant Ferguson, discouraged youth from meeting with SPLC and

told youth that SPLC just wanted to "shut down the program" and would not be able to help

youth with their problems.

29.     Defendant Ferguson pressured a number of youth to sign or write statements saying that

they no longer wanted to meet with SPLC.  On or about September 20, 2010, Dr. Ferguson met

with Plaintiff D.L. and asked him to sign a statement saying that he was not interested in meeting

with David Utter from SPLC.  Defendant Ferguson offered to take Plaintiff D.L. out of his

"jumper" and put him in a regular uniform if he signed the form.  Youth at Thompson Academy

are put in a jumpsuit or "jumper" as a form of punishment, and each day they spend in a jumpsuit

adds additional days to their confinement at Thompson.  Plaintiff D.L. refused to sign the form,

and Defendant Ferguson did not take D.L. out of his jumpsuit that day, which added time to

D.L.'s commitment at Thompson Academy.

30.     On or about September 27, 2010, Defendant Augustine physically assaulted Plaintiff D.L. in the Falcon Unit dayroom at Thompson Academy without provocation.  Defendant Augustine instructed D.L. to stand up and then called D.L. a "fuck nigger."  When D.L. responded that Defendant Augustine could not call him that, Defendant Augustine continued to direct abusive, racial epithets toward D.L.

31.     Upon information and belief, YSI policy requires staff to give youth seven verbal warnings or commands before using physical force.  Defendant Augustine told D.L. to "get up" several times in quick succession, and then immediately grabbed D.L. by his collar, picked him up and pressed him against the wall.  Defendant Augustine proceeded to choke D.L. while pressing him against the wall, which prevented D.L. from breathing.  D.L. tried to push Defendant Augustine's arms away and told Defendant Augustine to let him go, to which Defendant Augustine replied, "no, fuck nigger you let me go."

32.     Other guards intervened and Defendant Augustine initially let D.L. go.  D.L. tried to sit down but Defendant Augustine approached him again and said, "I know you scared now." Defendant Augustine then "chicken winged" D.L. by twisting D.L.'s arms behind his back, which caused D.L. to experience extreme pain and discomfort.  Defendant Augustine then slammed D.L.'s head into the metal door outside the day room and yelled to D.L., "tighten up you pussy ass jit."

33.     Other staff intervened again and Defendant Augustine let D.L. go but only to move D.L. to the hallway, away from the other youth.  Defendant Augustine then grabbed D.L. by the top of his jumper and tried to slam D.L., head first, into the concrete wall.  D.L. had to reach out with his hands to prevent his head from smashing against the concrete wall.  Defendant Augustine then dragged D.L. by his jumper down the hall, throwing him at the wall as he went.

34.     Staff intervened again and Defendant Augustine released D.L.  D.L. went back to the day room and told other staff that he wanted to call the central child abuse hotline to report Defendant Augustine's excessive and abusive use of force.  The staff replied, "just calm down, we're gonna talk this through, just calm down."

35.     The supervisor on duty, Ms. Smith, took D.L. into an office and told D.L. that it was unnecessary to call the abuse hotline because the incident would be written up no matter what and calling the hotline would be redundant.

36.     Later that day, Ms. Smith called D.L. out of class to meet with Mr. Emmanuel, the Director of Operations for Thompson Academy.  Mr. Emmanuel had a document acknowledging that D.L. waived his right to call the abuse hotline, and that the facility had not dissuaded D.L. from calling.  D.L. asked Mr. Emmanuel whether he would be "written up" if he called the abuse hotline, because getting "written up" would extend his commitment to Thompson Academy. Afraid of what would happen to him if he called the abuse hotline, D.L. signed the waiver.

37.     On or about September 29, 2010, D.L. was told to come to the "DCS" room by YSI staff members Mr. Clark and Mr. Rogers.  D.L. was promised that the incident with Defendant Augustine would be overlooked, he would be taken out of his jumpsuit, have his privilege of working in the cafeteria and getting extra food restored, and Thompson Academy would send his pre-release notification[1] ("PRN") to the juvenile court *if and only if* D.L. signed a document stating that he no longer wanted to speak to or be represented by David Utter and SPLC.  Despite being fearful that he would have his time at Thompson extended and be blamed for Defendant Augustine's violent actions if he refused, D.L. declined to do so.  Upon information and belief, Defendant Ferguson allowed Plaintiff D.L. to change into his regular uniform, but did not restore

---

[1] The pre-release notification, or PRN, must be sent to the juvenile court in order for a youth to be released from Thompson Academy.

his cafeteria privilege or send his PRN to the juvenile court that day.  Defendant Ferguson's actions and inactions were direct retaliation for D.L. exercising his First Amendment rights.

38.     On or about September 30, 2010, staff member Ms. Jackson (who is referred to as "02" because she is second in command at the facility), told D.L. that D.L.'s lawyers are "trying to get this program shut down" and asked if D.L. was going to sign the document waiving access to his attorneys and SPLC.  Ms. Jackson told D.L. that she noticed that he was not in his jumper and then told D.L. that he would not have to worry about any consequences for the incident with Augustine if he wrote a statement refusing to speak with SPLC.  D.L. refused to write such a statement.  As a result, Defendant Ferguson did not restore D.L.'s cafeteria privilege, nor did he send D.L.'s PRN to the juvenile court, which deprived D.L. of the opportunity for release and prolonged his confinement at Thompson Academy.  Defendant Ferguson's actions and inactions were direct retaliation for D.L. exercising his First Amendment rights.

39.     On or about September 30, 2010, Plaintiff's counsel arrived at Thompson Academy to visit with clients.  Thompson Academy staff presented SPLC with documents on Thompson letterhead from five clients declaring that they are "not interested in speaking with David Utter or his staff about legal issues and do not want legal representation."  An additional four handwritten statements from clients were presented by Thompson staff.  One of these statements was written by Plaintiff D.B.  D.B. wrote this statement in Dr. Ferguson's office on or around September 21, 2010 after Dr. Ferguson told D.B. and another youth that SPLC was messing up their future and could not help them with their cases.  Dr. Ferguson provided D.B. and the other youth with a can of soda during this meeting.  Upon information and belief, youth at Thompson Academy do not have regular access to soda without special permission.

40.     When Plaintiff's counsel asked for permission to discuss these statements directly with clients, Thompson Academy staff denied such access.  Upon information and belief, Defendant Ferguson directed other YSI staff to deny SPLC access to their clients.

41.     Plaintiff D.L. never signed a statement refusing to meet with SPLC.  On or about September 30, 2010, Plaintiff's counsel was able to visit with Plaintiff D.L.  During this meeting, Plaintiff D.L. requested that SPLC file two grievances on his behalf alleging excessive use of force by Defendant Augustine and denial of access to courts.  Plaintiff D.L. complained that he could not make phone calls to his attorney without his counselor's permission and that he could not make these phone calls in private.  D.L. also complained that YSI refused to allow him to make phone calls to his attorney.

42.     After leaving Thompson Academy on September 30, 2010, Plaintiff's counsel sent a demand letter to Defendant Peterman describing the inability of youth to make confidential phone calls to attorneys, Defendant Ferguson's unlawful interference with youths' right to access the courts, and Defendant Ferguson's attempt to procure statements from youth waiving their right to speak with an attorney.

43.     On or about September 27, 2010, Plaintiff D.B.'s mother informed SPLC that Plaintiff D.B. wished to retract his statement waiving his right to speak with an attorney.  When D.B. met with SPLC on the morning of Friday, October 1, SPLC staff learned for the first time that the youth had been sexually assaulted by Defendant Presley, a YSI employee, on two separate occasions.  D.B. also stated that he had reported this abuse to Defendant Ferguson a number of months ago, but Dr. Ferguson had done nothing to remove Defendant Presley from his employment at Thompson Academy or to protect D.B. and other youth from Defendant Presley's abusive behavior.

44.      Plaintiff's counsel attempted to meet with Plaintiff D.B. a second time on October 1, 2010 to monitor D.B.'s safety and well-being.  When SPLC staff arrived at Thompson Academy, they were informed that they could not meet with any youth.  Plaintiff's counsel, David Utter, then checked his voicemail and received a message from Jennifer Parker, General Counsel at DJJ, stating that youth in the custody of DJJ may only communicate with lawyers who are "counsel of record."  DJJ regulations state that youth in residential programs may only meet and communicate with their "counsel or record," which excludes attorneys who are not currently representing youth in their delinquency proceeding or another legal matter.  *See* Dept. of Juv. Justice Reg. 63E-7.  DJJ has also taken the position that a youth's defense attorney may not speak to youth in DJJ custody if the juvenile court has already rendered a final disposition in the youth's case.  Youth in DJJ custody therefore have no ability to speak to an attorney about their conditions of confinement.

45.      On or about Tuesday, October 5, 2010, Plaintiff's counsel sent a confirmation letter to Ms. Parker regarding her voicemail on October 1, 2010.  On the same day, Ms. Parker sent a letter stating that Thompson Academy's "operating procedures allow for confidential meetings and phone calls between youth in the Academy and their attorneys."  She further stated that the "staff [would] be reminded that communications between a youth and his counsel are confidential."  On the morning of October 6, 2010, SPLC attorney, Mr. Utter, was finally permitted to visit with D.L.

46.      Youth at Thompson Academy are still unable to access phones for confidential calls with attorneys.  Youth are barred from making any phone contact with their attorneys—with the exception of the rare occasion when a case manager allows youth to make a phone call. Even when youth contact their attorneys from their case manager's office, youth are prohibited from

conducting confidential conversations with their attorneys because case mangers and other staff are present.  Defendants Peterman, Slattery, and Ferguson are responsible for establishing policies and procedures to enable youth to access the courts and communicate with their attorneys through confidential phone calls, as required by the U.S. Constitution and Constitution of the State of Florida, but have failed to do so.  Defendants Slattery, and Ferguson have instead implemented policies and practices that restrict Plaintiff D.L. and the proposed class from contacting an attorney and accessing the courts to challenge conditions of confinement. Defendants Slattery and Ferguson have also implemented, enforced, and or sanctioned a policy and practice of retaliating against D.L. and the proposed class for exercising their First and Fourteenth Amendment rights to access the courts to challenge their conditions of confinement. By their failure to comply with state and federal law, Defendants Peterman, Slattery, Ferguson, and Augustine continue to subject youth confined at Thompson Academy to an unacceptable risk of constitutional violations which manifests in egregious abuses like those suffered by D.L.

47.     Defendant Peterman monitors and receives information from YSI and Thompson Academy on a regular basis and is aware of the policies and practices at Thompson Academy. Defendant Peterman is aware that YSI and Thompson Academy violate state and federal law by denying youth meaningful and adequate access to the courts and is aware that YSI and Thompson Academy retaliate against youth for exercising their First Amendment rights. Defendant Peterman and DJJ have failed to protect Plaintiff D.L.'s constitutional rights and have instead formulated policy and instructed YSI and Thompson Academy to deny youth, including Plaintiff D.L., access to phone calls and visits with attorneys to challenge unconstitutional conditions of confinement at Thompson Academy.  As a result of Defendant Peterman's actions and inactions, youth at Thompson Academy are denied adequate and meaningful access to the

courts and suffer retaliation for exercising their First Amendment right to challenge their

conditions of confinement.

48.     Defendants Slattery and Ferguson are aware that YSI staff regularly use excessive and

inappropriate force against youth confined at Thompson Academy, in violation of their rights

under the Eighth and Fourteenth Amendments of the U.S. Constitution.  By their failure to

comply with federal law, Defendants Slattery and Ferguson fail to protect youth from harm and

exhibit deliberate indifference to the constitutional rights of youth by continuing to subject youth

at Thompson Academy to an unacceptable risk of excessive and abusive force.

49.     Defendant Peterman monitors Thompson Academy and is aware that youth at Thompson

Academy are subject to excessive and abusive force in violation of their constitutional rights.

Despite this knowledge, Defendant Peterman has failed to take appropriate action to ensure that

youth confined at Thompson Academy are protected from harm and are free from excessive

force, as required by the Eighth and Fourteenth Amendments of the U.S. Constitution.  By his

failure to take action to reform polices and practices at Thompson Academy, Defendant

Peterman fails to protect youth from harm and exhibits deliberate indifference to the

constitutional rights of youth by continuing to subject youth at Thompson Academy to an

unacceptable risk of excessive and abusive force.

**Staff-on-Youth Sexual Assault of Plaintiff D.B.**

50.     Defendant Presley sexually assaulted Plaintiff D.B. on two separate occasions at

Thompson Academy by forcing D.B. to perform oral sex.  Plaintiff D.B. reported the first assault

to multiple YSI staff members, including Defendant Ferguson.  However, Defendants never

removed Defendant Presley from his position and allowed him to have continued contact with

youth, including Plaintiff D.B.  Consequently, Defendant Presley had the opportunity to commit a second sexual assault on D.B. in or around August, 2010.

51.      In or about February or March 2010, D.B. was alone in the laundry room at Thompson Academy on "work privilege duty" which allowed him to perform chores like doing the laundry instead of staying in the dayroom.  Defendant Presley entered the laundry room and grabbed his own crotch and asked "are you going to suck it?"  D.B. refused, but Defendant Presley continued to demand that he perform oral sex.  Eventually, Defendant Presley pulled out his penis and forced  D.B. to perform oral sex.  When Defendant Presley ejaculated, D.B. spit out Defendant Presley's semen into a rag.  Defendant Presley then left the laundry room.

52.      D.B. immediately reported the sexual assault to a staff person named Treva Hutchinson, a Thompson Academy staff member whom he trusted, and showed her the rag that contained Defendant Presley's semen from the incident in the laundry room.  The next day Hutchinson told D.B. he had to report the incident to Defendant Ferguson.

53.      When D.B. arrived in Defendant Ferguson's office, Defendant Ferguson asked D.B. about the "rumor" about the sexual assault.  D.B. denied that it was a rumor and described the sexual assault to Defendant Ferguson.  He told Defendant Ferguson about the rag containing Defendant Presley's semen.  D.B. also told Defendant Ferguson that he gave Ms. Hutchinson the rag.  Defendant Ferguson then spoke to Ms. Hutchinson without D.B. present.  Following that conversation, Defendant Ferguson instructed D.B. not to mention the incident to anyone, and then sent him back to his living unit.

54.      A few days after D.B.'s meeting with Defendant Ferguson, an investigator spoke to D.B. about the incident.  The investigator asked D.B. if Defendant Presley was circumcised.  D.B. stated that Presley was circumcised and provided the investigator with descriptive information

about Presley's body.  A few days later, the investigator met with D.B. again and told him that he "passed" because Presley was in fact circumcised.  Defendant Presley continued to work at Thompson Academy and have unsupervised contact with D.B. and other youth.

55.     In or about August 2010, Defendant Ferguson permitted Defendant Presley to transport D.B. off-campus to the dentist's office.  During the visit, Defendant Presley escorted D.B. to the bathroom, removed D.B's handcuffs, and followed D.B. into the bathroom.  Defendant Presley stood behind D.B. and asked him "are you going to do it?"  D.B. asked what he meant, and Defendant Pressley responded: "suck it."  Defendant Presley then pulled out his penis and said that he would not let D.B. out of the bathroom.  D.B. then performed nonconsensual oral sex on Defendant Presley for a second time.

56.     Despite having knowledge that Defendant Presley sexually assaulted D.B., Defendant Ferguson failed to take appropriate action to train, supervise, and monitor Defendant Presley to protect D.B. from sexual abuse.  As a direct and proximate cause of Defendant Ferguson's negligent supervision of Defendant Presley, Plaintiff D.B. endured two sexual assaults in violation of state and federal law.

57.     Defendant Peterman monitors Thompson Academy and has knowledge of the failure to train, supervise, and monitor YSI employees.  By failing to take appropriate action to ensure that YSI employees are properly trained and supervised, Plaintiff D.B. was sexually assaulted by a YSI employee on two separate occasions.

58.     Undoubtedly, the sexual abuse D.B. suffered at the hands of YSI employees, combined with the deliberate indifference of Defendant Ferguson, YSI, and DJJ officials to his protection and safety, have caused D.B. to suffer extreme emotional distress, humiliation, trauma and fear. Since the sexual assaults, D.B. has attempted suicide on three separate occasions, by drinking

bleach and attempting to hang himself.  Although D.B. was briefly sent to a treatment facility

after his first suicide attempt, he was returned to Thompson shortly thereafter.

## Necessity for Injunctive Relief

59.     The Defendants have acted and continue to act in violation of the law as described above.

Plaintiff D.L. and the class he seeks to represent do not have an adequate remedy at law.  As a

result of the policies, practices, acts and omissions of the Defendants, D.L. and the class of

children he seeks to represent have suffered and continue to suffer imminent, serious and

irreparable injuries.

## EXHAUSTION

60.     Plaintiffs have exhausted all available administrative remedies.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

61.     Plaintiff D.B. timely filed notice with the DJJ and Department of Financial Services

pursuant to Fla. Stat. § 768.28(6) regarding his state tort law claims against DJJ and YSI.

## CAUSES OF ACTION

### Count I

### Declaratory and Injunctive Relief for Eighth and Fourteenth Amendment Violations: Failure to Protect From Harm

62.     Plaintiff D.L. incorporates by reference the foregoing paragraphs to support the claim of

failure to protect from harm.

63.     By their foregoing actions and inactions, Defendants Peterman, Slattery, and Ferguson

are liable pursuant to 42 U.S.C. § 1983 for failing to protect D.L. and the class he seeks to

represent from harm at Thompson Academy.  Violence is so widespread and excessive force so

frequent at Thompson Academy that Defendants Peterman, Slattery, and Ferguson are or should

be aware of the harm inflicted upon Plaintiff D.L. but fail to take appropriate action to train, supervise, and monitor staff in order to protect the children entrusted to their care and prevent egregious constitutional violations.  Defendants' deliberate indifference to Plaintiffs' constitutional right to be protected from excessive force violates the Eighth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.  Plaintiff D.L. and the class he seeks to represent are entitled to declaratory relief and a permanent injunction requiring Defendants Peterman, Slattery, and Ferguson to provide Plaintiff and the proposed class with constitutionally adequate conditions of confinement by protecting Plaintiffs from harm.

## Count II

### Declaratory Relief for Eighth and Fourteenth Amendment Violations: Failure to Protect Plaintiff D.B. From Staff-on-Youth Sexual Assault

64.     Plaintiff D.B. incorporates by reference the foregoing paragraphs to support the claim of failure to protect Plaintiff D.B. from staff-on-youth sexual assault.

65.     Defendants Peterman, Slattery, and Ferguson's refusal and failure to protect Plaintiff D.B. from sexual abuse, despite knowledge of prior allegations of sexual abuse, violates Plaintiff D.B.'s constitutional rights under the Eighth and Fourteenth Amendments of the United States Constitution as enforced through 42 U.S.C. § 1983.  Plaintiff D.B. seeks declaratory relief against these Defendants.

## Count III

### Declaratory and Injunctive Relief for Violation of Right to Access Courts Under First and Fourteenth Amendments of the United States Constitution and Article I, Section 21 of the Constitution of the State of Florida

66.     Plaintiff D.L. incorporates by reference the foregoing paragraphs to support the claim of denial of right to access courts.

67.     Defendants Peterman, Slattery, and Ferguson's policies and practices of depriving Plaintiffs of a means to contact attorneys and maintain confidential communications with their attorneys violates the Plaintiffs' First and Fourteenth Amendment rights to the United States Constitution and to due process of law as enforced through 42 U.S.C. § 1983, and their right to access the courts under Article I, Section 21 of the Constitution of the State of Florida. Defendants' practices and policies violate Plaintiffs' constitutional right to adequate, effective and meaningful access to the courts. Plaintiff D.L. and the class he seeks to represent are entitled to permanent injunctive relief against these Defendants requiring them to provide Plaintiffs with adequate, effective, and meaningful access to the courts.

## Count IV

### Declaratory and Injunctive Relief for First Amendment Violations: Retaliation

68.     Plaintiff D.L. incorporates by reference the foregoing paragraphs to support the claim of retaliation.

69.     Defendants Peterman, Slattery, and Ferguson's policy and practice of intimidating, threatening, harassing, and punishing youth for exercising their right to speak to attorneys and access the courts violates Plaintiff's First Amendment right to free speech under the U.S. Constitution as enforced through 42 U.S.C. § 1983.  Plaintiff D.L. and the class he seeks to represent have a constitutional right to access the courts and speak with attorneys.  Defendants Peterman, Slattery, and Ferguson violated this right by pressuring D.L. to sign a form waiving his right to speak with an attorney and then stripping D.L. of his privileges, subjecting him to additional confinement at Thompson Academy, and denying D.L. visits and phone calls with his

attorneys.  Plaintiff D.L. and the class he seeks to represent are entitled to permanent injunctive relief against these Defendants requiring them to cease all retaliation against Plaintiffs for exercising their constitutional rights.

### Count V

### Damages for Eighth and Fourteenth Amendment Violations:
### Staff-on-Youth Sexual Assault

70.     Plaintiff D.B. incorporates by reference the foregoing paragraphs to support the claim of staff-on-youth sexual assault.

71.     By taking the actions above, Defendants Presley and Ferguson intentionally and maliciously violated Plaintiff D.B's right to be free from substantial and excessive harm, in violation of the Eighth and Fourteenth Amendments to the United States Constitution as enforced through 42 U.S.C. § 1983.  Because Defendants Presley and Ferguson acted in clear violation of well-established law, of which a reasonable person would have been aware, they are not entitled to a good faith or official immunity defense.  Defendants Presley and Ferguson acted recklessly, maliciously and with a callous disregard or indifference to the rights of Plaintiff D.B. Plaintiff D.B. seeks declaratory judgment, compensatory and punitive damages against Defendants Presley and Ferguson.

### Count VI

### Negligent Supervision in Violation of Florida Law for Sexual Assault of Plaintiff D.B.

72.     Plaintiff D.B. incorporates by reference the foregoing paragraphs to support the claim of negligent supervision against Defendants Peterman, Slattery and Ferguson.

73.     Defendants Slattery and Ferguson possessed a duty pursuant to state law, the Eighth and Fourteenth Amendments to the U.S. Constitution, and pursuant to the contract between YSI and DJJ to protect youth committed to Thompson Academy from harm and abuse by staff employed

by YSI to work at Thompson Academy.  Defendant Ferguson, as an agent and employee of YSI at all relevant times, failed to protect Plaintiff D.B. from sexual assault by Defendant Presley by telling Plaintiff D.B. to not report the incident, allowing Defendant Presley to continue working at Thompson Academy, and allowing Defendant Presley to take Plaintiff D.B. to an off-campus dental appointment where Plaintiff D.B. would be alone with Defendant Presley.  Due to Defendant Ferguson's failure to properly supervise Defendant Presley, Plaintiff D.B. suffered a second sexual assault by Defendant Presley, causing Plaintiff D.B. to suffer severe and permanent traumatic injuries, including mental, emotional, and psychological damages. Defendant Ferguson's negligent supervision is actionable against Defendants Peterman and Slattery, pursuant to Fla. Stat. § 768.28(9)(a), and because Defendant Ferguson was an employee of YSI and an agent of DJJ at all relevant times.

74.     D.B. seeks declaratory relief and compensatory damages against Defendant Peterman, and compensatory and punitive damages against Defendants Slattery and Ferguson.

### Count VII

### Intentional Infliction of Emotional Distress by Defendants Presley and Slattery in Violation of Florida Law for Sexual Assault on Plaintiff D.B.

75.     Plaintiff D.B. incorporates by reference the foregoing paragraphs to support a claim of intentional infliction of emotional distress.

76.     Defendant Presley engaged in deliberate and reckless conduct that he knew or should have known would inflict emotional distress when he forced Plaintiff D.B., a child of fourteen years, to perform oral sex on him on two separate occasions.  Forcing a child to perform a sexual act on an adult who exercises power and control over the child inside a juvenile correctional facility is outrageous and exceeds all bounds of decency.  Defendant Presley's conduct caused, and continues to cause, Plaintiff D.B. to experience severe and permanent emotional distress,

which is evidenced in part by D.B.'s suicide attempts at Thompson Academy.  Defendant

Presley's intentional infliction of emotional distress is actionable against Defendant Slattery and

YSI because Defendant Presley was an agent or employee of YSI at all relevant times.

77.     Plaintiff D.B. seeks a declaratory judgment, compensatory, and punitive damages against

Defendants Presley and Slattery.

### Count VIII

### Intentional Infliction of Emotional Distress by Defendants Ferguson and Slattery in Violation of Florida Law for Sexual Battery on Plaintiff D.B.

78.     Plaintiff D.B. incorporates by reference the foregoing paragraphs to support a claim of

intentional infliction of emotional distress.

79.     Defendant Ferguson engaged in deliberate and reckless conduct that he knew or should

have known would inflict emotional distress when he failed to remove Defendant Presley from

having further contact with Plaintiff D.B. after he learned of Defendant Presley's sexual assault

upon D.B. and allowed Defendant Presley to transport D.B. to an off-campus dental appointment

where he would be alone with D.B.  Defendant Ferguson knew or should have known that

placing D.B. under Defendant Presley's control after Presley sexually assaulted D.B. would

cause D.B. emotional distress.  Defendant Ferguson's actions were outrageous and exceeded all

bounds of decency and caused D.B. to experience severe emotional distress.   Defendant

Ferguson's intentional infliction of emotional distress is actionable against Defendant Slattery

and YSI because Defendant Ferguson was an employee or agent of YSI at all relevant times.

80.     Plaintiff D.B. seeks a declaratory judgment, compensatory, and punitive damages against

Defendants Ferguson and Slattery.

### Count IX

### Sexual Battery of Plaintiff D.B. by Defendant Presley in Violation of Florida Law

81.     Plaintiff D.B. incorporates by reference the foregoing paragraphs to support a claim of sexual battery.

82.     Defendant Presley committed a sexual battery upon Plaintiff D.B. in or around February or March 2010 by forcing Plaintiff D.B. to perform oral sex on him in a laundry room at Thompson Academy.  Defendant Presley's physical contact with Plaintiff D.B. was unlawful, pursuant to Florida law, intentional, and was harmful and offensive to Plaintiff D.B.  Defendant Presley's sexual battery is actionable against Defendant Slattery and YSI because Defendant Presley was an agent or employee of YSI at all relevant times.

83.     Plaintiff D.B. seeks a declaratory judgment, compensatory, and punitive damages against Defendants Presley and Slattery

## Count X

### Sexual Battery of Plaintiff D.B. by Defendant Presley in Violation of Florida Law

84.     Plaintiff D.B. incorporates by reference the foregoing paragraphs to support a claim of sexual battery.

85.     Defendant Presley committed a sexual battery upon Plaintiff D.B. in or around August 2010 by forcing Plaintiff D.B. to perform oral sex on him in a restroom at a dentist's office located off of Thompson Academy's campus.  Defendant Presley's physical contact with Plaintiff D.B. was unlawful, pursuant to Florida law, intentional, and was harmful and offensive to Plaintiff D.B.  Defendant Presley's sexual battery is actionable against Defendant Slattery and YSI because Defendant Presley was an agent or employee of YSI at all relevant times.

86.     Plaintiff D.B. seeks a declaratory judgment, compensatory, and punitive damages against Defendants Presley and Slattery.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court grant the following relief:

a) Assume jurisdiction over this matter;

b) Certify this matter as a class action pursuant to Fed. R. Civ. Pr. 23(a) and (b)(2) consisting of a class of all youth who are or will be incarcerated at Thompson Academy;

c) Declare that the acts and omissions of all Defendants violate the U.S. Constitution and Constitution of the State of Florida;

d) Declare that the acts and omissions of Defendants Slattery, Ferguson, and Presley with regard to Plaintiff D.B. violate state law;

e) Enter a preliminary and permanent injunction requiring the Defendants, their agents, employees and all persons acting in concert with the Defendants to cease their unconstitutional and unlawful practices;

f) Award Plaintiff D.B. compensatory and punitive damages for the injuries he sustained as a result of Defendants Slattery, Ferguson, and Presley's actions and inactions;

g) Award to Plaintiffs reasonable costs and attorney's fees under 42 U.S.C. § 1988;  and

h) Grant the Plaintiffs such other relief as the Court deems just.

Dated this 8th day of October, 2010.

Respectfully submitted,


s/Matthew Farmer_____
Matthew Farmer, Florida Bar Number: 0793469
Farmer & Fitzgerald, P.A.
708 East Jackson St.
Tampa, FL 33602
Telephone: 813-228-0095
Facsimile: 813-224-0269
Email: mattfarmer1@aol.com

Vanessa Carroll, Mississippi Bar Number: 102736*
Southern Poverty Law Center

4431 Canal St.
New Orleans, LA 70119
Phone: 504-486-8982
Facsimile: 504-486-8947
Email: vanessa.carroll@splcenter.org
* Motion to appear *pro hac vice* pending

David Utter, Georgia Bar Number: 723144*
Southern Poverty Law Center
3000 Biscayne Blvd., Suite #212
Miami, FL 33137
Phone: 786-347-2056
Facsimile: 334-956-8480
Email: david.utter@splcenter.org
* Motion to appear *pro hac vice* pending

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 8, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on the following parties as soon as possible in compliance with Fed. R. Civ. P. 4(e), (h), and (j)(2):

Frank Peterman, Jr., Secretary
Florida Department of Juvenile Justice
Knight Building
2737 Centerview Dr.
Tallahassee, FL 32399-3100

James Slattery, President
Youth Services International
6000 Cattleridge Dr., Suite 200
Sarasota, FL 34232

Craig Ferguson, Facility Administrator
YSI Thompson Academy
1150 Hibiscus Dr.
Pembroke Pines, FL 33025

Youth Counselor Presley
YSI Thompson Academy
1150 Hibiscus Dr.
Pembroke Pines, FL 33025

Youth Counselor Augustine
YSI Thompson Academy
1150 Hibiscus Dr.
Pembroke Pines, FL 33025

Respectfully submitted,

s/Matthew Farmer
Matthew Farmer, Florida Bar Number: 0793469