UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61902-CIV-MOORE/SIMONTON

D.L., et al.,

    Plaintiffs,

v.

JAMES SLATTERY, et al.,

    Defendants.
_____/

### ORDER DENYING DEFENDANTS' MOTIONS FOR PROTECTIVE ORDER AND REVOCATION OF *PRO HAC VICE* ADMISSIONS

Presently pending before the Court is Private Defendants' Motions for Protective Order Prohibiting Plaintiffs' Counsel and Plaintiffs from Making Certain Extrajudicial Statements and to Revoke *Pro Hac Vice* Admissions of Two Plaintiffs' Counsel (DE # 64).[1] Defendants' Motions have been fully briefed (DE ## 69, 79, 86, 97, 99, 102, 104). The Honorable K. Michael Moore has referred this matter to the undersigned Magistrate Judge with respect to all pretrial discovery matters, generally (DE # 7), and specifically in regard to Defendants' Motions (DE # 67). On March 24, 2011, this matter was before the Court for a hearing on Defendants' Motions. For the reasons stated below, Defendants' Motions are denied.

    I.    BACKGROUND

Plaintiffs, current or former residents of Thompson Academy, a privately managed facility in Broward County, which is funded by the Florida Department of Juvenile Justice and serves state juvenile offenders, have filed a 14-count class action Amended Complaint against Youth Services International, Inc. ("YSI," a private, for-profit enterprise

---

[1] "Private Defendants" are defined in Defendants' Motions as Defendants Youth Services International, Inc. ("YSI"), Craig Ferguson, Mr. Augustine, and Mr. Presley. The other Defendants have not joined in Private Defendants' Motions, but the undersigned refers herein to "Private Defendants" as "Defendants" for simplicity.

that manages Thompson Academy), two counselors of Thompson Academy, the Facility Administrator of Thompson Academy, and the Secretary of the Florida Department of Juvenile Justice.  Plaintiffs allege they have suffered civil rights abuses while residents of Thompson Academy.  Their Amended Complaint alleges the following causes of action:  (a) Declaratory and injunctive relief for (1) failure to protect from harm (Count I), (2) violation of right to access courts (Count III), (3) denial of Due Process (Count IV), (4) retaliation under the First Amendment (Count V), (5) denial of necessary medical care (Count VI), and (6) denial of adequate and nutritious meals (Count VII); (b) declaratory relief for failure to protect Plaintiff D.B.2 from "Staff-on-Youth Sexual Assault" (Count II); (c) declaratory relief and damages for (1) breach of contract violations (Count VIII) and (2) "Staff-on-Youth Sexual Assault" (Count IX); (d) negligent supervision for sexual assault of Plaintiff D.B.2 (Count X); (e) intentional infliction of emotional distress by (1) Defendants Presley and YSI for sexual assault on Plaintiff D.B.2 (Count XI) and (2) by Defendants Ferguson and YSI for sexual assault of Plaintiff D.B.2 (Count XII); and (f) two counts (Counts XIII and XIV) of sexual battery of Plaintiff D.B.2 by Defendant Presley (DE # 24).

Defendants have not yet filed their Answer.  The trial is set for the two-week trial period of June 20, 2011, and the discovery deadline is April 11, 2011 (DE # 45).

Over the past several months, certain Plaintiffs' counsel who work for the Southern Poverty Law Center ("SPLC") have made extrajudicial statements through various publicly available media regarding this matter and, more broadly, public policy issues pursued by SPLC, such as the privatization of some services of Florida's Department of Juvenile Justice, which relate to SPLC's interests in this matter.  These statements have been critical of Defendants and their actions.  Plaintiffs' counsel describe the SPLC as an organization that "engages in campaigns [that] use litigation, community mobilization, media and policy advocacy to reduce juvenile imprisonment

2

and increase use to [sic] community-based alternatives to incarceration" (DE # 69 at 7). In addition to statements by Plaintiffs' counsel, other statements of a similar variety have been attributed to certain Plaintiffs or their family members. These statements attributable to Plaintiffs or Plaintiffs' counsel serve as the basis for Defendants' Motions.

## II. PARTIES' POSITIONS AS TO DEFENDANTS' MOTIONS

### A. DEFENDANTS' MOTION FOR PROTECTIVE ORDER

In Defendants' Motions, Defendants request a protective order to ensure a fair trial for themselves, asserting that the court has an affirmative duty to limit the effects of prejudicial pretrial publicity (DE # 64 at 9). Defendants catalog the extrajudicial statements described above that have been attributed to Plaintiff's counsel or Plaintiffs. Defendants maintain that Plaintiffs' counsel have "saturated the media" with information about the trial as part of a "media campaign" designed "to try and convict Private Defendants in the local press, robbing Private Defendants, at this early stage of the litigation, of their right to a fair and impartial jury and trial" (DE # 64 at 12).

Such efforts, Defendants continue, demonstrate at least a "reasonable likelihood" under U.S. Southern District of Florida Local Rule 77.2(a)(7) (the "Local Rule," described below) of interference with a fair trial (DE # 64 at 11). Defendants contend that parties' First Amendment rights must be balanced against other interests in the context of litigation, and that a protective order such as the one proposed by Defendants provides the most suitable means for balancing these interests (DE # 64 at 12-13).

Finally, Defendants conclude, Plaintiffs' counsel have violated Florida Bar Rule 4-3.6(b) (the "Florida Bar Rule," described below) by assisting others (namely, the Plaintiffs, themselves) in making prohibited statements, such as through Plaintiffs' alleged creation of the group Stop Abusing Our Kids ("SAOK") as a "façade" for Plaintiffs' counsel's activities (DE # 64 at 13).

Plaintiffs respond that the Local Rule and the Florida Bar Rule must be read in conjunction with First Amendment case law, in particular, *In re Primus*, 436 U.S. 412 (1978) and *NAACP v. Button*, 371 U.S. 415 (1963) (discussed below), in order to give effect to both Rules as well as constitutional speech protections. Plaintiffs' counsel describe the SPLC as a public interest, nonprofit, legal organization, comparable to that of the NAACP or ACLU, and argue that the SPLC should be afforded similar First Amendment protections in pursuing "public interest lawsuits." Likening itself to such organizations, the SPLC contends that it uses litigation as a form of political expression, representing but one instrument in its multifaceted approach to effecting identified public policy changes (DE # 69 at 5-7).

Plaintiffs point out that some cases cited by Defendants in support of protective orders were issued to protect a defendant's rights in the criminal context, a distinguishable characteristic (DE # 69 at 14, 17-19). At any rate, Plaintiffs continue, the statements made by Plaintiffs' counsel include no more than facts already publicly available in filed pleadings (DE # 69 at 5-6). In regard to other statements, Plaintiffs' counsel object to attribution to SPLC of actions taken by SAOK and state that Defendants have offered no evidence of attribution (DE # 69 at 11, 22-23). Finally, Plaintiffs emphasize that Defendants have made no showing that the statements, which were allegedly disseminated to only a "fraction" of the local community, are reasonably likely to preclude a fair trial, especially since the principal relief sought, injunctive relief, will be decided by the Court, not a jury (DE # 69 at 8-10, 14-16). Plaintiffs conclude that the Local Rule and Florida Bar Rule must be read to comport with First Amendment case law, which allows SPLC to litigate this matter while still exercising its right to seek redress from the government that cannot be obtained through the courts (DE # 69 at 16-17).

In their Reply, Defendants additionally cite subpart (a)(1) of the Local Rule, which sets the standard for analyzing public dissemination of information "in connection with pending or imminent criminal litigation…if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice" (DE # 79 at 3). Defendants argue that Plaintiffs' counsel's actions satisfy both of these requirements, although meeting only one is necessary under this subpart. Further, Defendants continue, pretrial publicity, such as that referred to in the Local Rule, presumptively interferes with a fair trial (DE # 79 at 4-5). Defendants note that Plaintiffs have not denied the statements attributed to them by Defendants. Finally, Defendants argue that the proposed restrictive order is the best possible means to afford them a fair trial because less restrictive means cited by Plaintiffs would not suffice (DE # 79 at 6).

In their Sur-Reply, Plaintiffs reargue that *In re Primus* and *Button* must be properly interpreted to apply to more than the limited right of solicitation (DE # 86 at 2-3). Finally, Plaintiffs assert that in the context of potentially restricting "core political speech," a presumption of reasonable likelihood of prejudice is inappropriate, and Defendants have not otherwise demonstrated such reasonable likelihood (DE # 86 at 4-6).

### B.     DEFENDANTS' MOTION TO REVOKE *PRO HAC VICE* STATUS

Defendants acknowledge the right of a party to choose its counsel but contend that admission *pro hac vice* to a court is a privilege that may be revoked for unethical behavior (DE # 64 at n.14). Defendants identify two standards for attorney disqualification under *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553 (11th Cir. 1997) and argue that attorneys David Utter and Vanessa Carroll have satisfied both; they have engaged in conduct reasonably likely to threaten the "orderly administration of justice" and have blatantly violated the Local Rule (DE # 64 at 15-16).

Plaintiffs respond that *Schlumberger* has been inappropriately applied because that was an "extreme" case involving an attorney intending to evade court orders

5

whereas SPLC counsel are "experienced nonprofit legal aid attorneys who have a track record of balancing their rights to petition for reform and in representing their clients in cases as officers of the court." Further, Plaintiffs continue, Defendants argument under the Local Rule fails because Plaintiff's counsel have not violated the Local Rule (DE # 69 at 20).

### III. STANDARD FOR PROTECTIVE ORDERS

U.S. Southern District of Florida Local Rule 77.2(a)(7) provides in relevant part as follows:

> A lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, [that] a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trial and [that] relates to:
>
> (A) Evidence regarding the occurrence or transaction involved.
> (B) The character, credibility, or criminal record of a party, witness, or prospective witness.
> (C) The performance or results of any examinations or tests or the refusal or failure of a party to submit to such.
> (D) The lawyer's opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule.
> (E) Any other matter reasonably likely to interfere with a fair trial of the action.

On its face, satisfying the Local Rule requires that a lawyer or law firm satisfy one of subparts (A) through (E), as well as the predicate language, i.e. that there is a "reasonable likelihood that such dissemination will interfere with a fair trial."

In addition to the Local Rule, the Florida Bar also addresses extrajudicial statements in its rules. In particular, Florida Bar Rule 4-3.6(a) states:

> A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an

6

>**adjudicative proceeding due to its creation of an imminent and substantial detrimental effect on that proceeding.**

**Under subpart (b) of the Florida Bar Rule, a lawyer may not assist another person in making prohibited statements and must take reasonable care to prevent third parties from making prohibited extrajudicial statements.**

### IV.   ANALYSIS

#### A.   FIRST AMENDMENT CLAIMS

While Plaintiffs' counsel dispute their purported role in certain extrajudicial statements, they do not deny that they have played a direct or indirect role in the public dissemination of several press releases or stories relating to the facts of this matter and the broader public policy issues addressed by the SPLC.  Plaintiffs' counsel argue, however, that First Amendment case law, read in conjunction with the requirements of the above-noted disciplinary Rules, provide Plaintiffs' counsel a margin within which to publicly comment on this matter, promote SPLC's broader policy goals, and still not offend these cited Rules.  While Plaintiffs at the hearing on this matter could not articulate the limits of this margin, they argue that such limits have not been crossed and, therefore, no protective order is appropriate.

Specifically in regard to SPLC's First Amendment rights, Plaintiffs contend that the rules from *In re Primus* and *Button* should be applied to this matter.  Those cases afforded to the ACLU and NAACP, respectively, First Amendment rights of association for soliciting clients when such activities might otherwise fun afoul of rules regulating the legal profession if those organizations had been private, commercial firms.  The holdings of those cases, Plaintiffs argue, should be applied more broadly to SPLC's right to lobby or petition its government for public policy changes alongside its litigation activities (DE # 69 at 11-12, 15).  Plaintiffs' counsel assert that the activities at issue in *In re Primus* and *Button,* along with those of SPLC in this matter, are all "core" speech

7

activities, and restrictions on them should be subject to the compelling interest/narrowly tailored means analysis of First Amendment case law, including *In re Primus* (DE # 69 at 12).

Defendants read the identified case law more narrowly, arguing that *In re Primus* "merely protects the rights of public lawyers and organizations to solicit clients" (DE # 79 at 2). Defendants also point out that no court has yet applied the rule of *In re Primus* to prejudicial pretrial publicity, as is at issue in this matter.

The undersigned need not reach this First Amendment issue.[2] Under the Local Rule, counsel's activities as described in subparts (A) through (E) must be read in conjunction with the Local Rule's predicate language requirement, that "there is a reasonable likelihood that such dissemination will interfere with a fair trial." Upon a review of the totality of the facts and circumstances of this matter, the undersigned finds that Defendants have not made a sufficient showing that the predicate requirement of the Local Rule has been satisfied. Therefore, the undersigned finds that, in considering all the facts of Plaintiffs and Plaintiffs' counsel's extrajudicial statements, the record does not support issuing a protective order at this time. *See Sheppard v. Maxwell*, 384 U.S. 333, 352-53 (1966) (reviewing the "totality of circumstances" in determining whether defendant was deprived a fair trial by prejudicial publicity).

### B.    LOCAL RULE 77.2(a)(7)

As noted, a lawyer or law firm must satisfy both components of the Local Rule in order to run afoul of it. Neither party disputes that Plaintiffs' counsel's actions satisfy at least one of the subparts, (A) through (E). The analysis, therefore, requires a review of the facts and circumstances of this particular matter to determine whether Plaintiffs'

---

[2] While the undersigned does not address the parties' specific First Amendment arguments, the undersigned does acknowledge that the U.S. Supreme Court noted in dicta in *In re Primus* that the ACLU has addressed itself to challenging issues of "substantial civil liberties questions," including those involving "juvenile rights." *In re Primus*, 436 U.S. at 427-28.

counsel's actions created under the predicate language a "reasonable likelihood that such dissemination will interfere with a fair trial."

As an initial matter, the undersigned notes the timing of Plaintiffs' counsel's extrajudicial statements and the trial, in relation to any demonstrated prejudice. Although Defendants have indicated that Plaintiffs' counsel's extrajudicial statements continue, the vast majority of those cited by Defendants appear to have occurred from October to December of 2010. Trial in this matter is currently set for June 20, 2011. The undersigned finds that these facts weigh against issuance of a protective order at this time. Although the extrajudicial statements at issue are undoubtedly archived indefinitely in an online digital format, as are most news stories and press releases in this digital age, Defendants have not made a sufficient showing that the statements remain in active circulation, or have prejudiced or continue to prejudice the community against Defendants, creating a reasonable likelihood that Defendants cannot receive a fair trial. To the extent Defendants fear that potential jurors can recall past statements at will electronically, such concerns are more appropriately addressed at the time of trial, which is still months away. *See Stroble v. California*, 343 U.S. 181, 195 (1952) (finding no showing of jury prejudice where most of the extensive pretrial publicity occurred six weeks before trial, and defendant otherwise made no affirmative showing of prejudice in the community); *cf. R.J. Reynolds Tobacco Co. v. Engle*, 750 So.2d 781 (Fla. Dist. Ct. App. 2000) (affirming order restraining parties and counsel from making extrajudicial statements during class action jury trial).

Therefore, in regard to timing and demonstrated likelihood of prejudice, the undersigned finds a protective order inappropriate. The undersigned does not preclude the possibility that pretrial publicity subsequent to this Order, were it to satisfy the other requirements for a protective order, might necessitate a protective order at a later date, upon proper motion. The facts of the current record, however, do not support issuance

9

now.  In this regard, the undersigned notes that Plaintiffs' counsel argued at the hearing that present efforts in the media were designed to address legislative proposals concerning the privatization of prisons, and that these efforts would no longer be critical after the end of the Florida legislative session, which should be well before the trial of this case.  In addition, Plaintiffs' counsel recognized the need to tailor their publicity efforts as the trial grows closer.

Upon a review of the other circumstances of this matter, this case simply has not devolved into the "carnival atmosphere" described in *Sheppard*, 384 U.S. at 358, or other cases that have necessitated protective orders to avoid prejudice to a party.  A matter in its relatively early stages, this case and the extrajudicial statements cited by Defendants do not demonstrate the extent of prejudice cataloged by the *Sheppard* Court, a murder trial garnering extraordinary media attention.  As another comparison, in *United States v. Brown*, 218 F.3d 415 (5th Cir. 2000), a criminal case that "generated extensive and intense local and national media attention," the court affirmed the appropriateness of a gag order, which also affected related cases with other defendants.  Even so, the gag order was temporarily lifted to provide a fair election campaign for Brown, a public official seeking reelection.  *Id.* at 419.  These facts are easily distinguishable from the matter before the Court.  Further, even with the excessive media coverage described in *Sheppard*, the Court in its decision noted that alternative means could have been employed by the lower court during trial to limit the prejudicial effects of pretrial publicity.  *Id.* at 357-58.

The undersigned understands that Defendants are dismayed by the extrajudicial statements at issue in this case, since such statements challenge the Defendants' business activities and actions.  Nonetheless, such dismay does not amount to the legal requirement for this type of protective order, nor do Plaintiffs or their counsel's actions rise to the level requiring issuance thereof.  Simply put, Defendants have not made a

showing that there is a "reasonable likelihood that such dissemination will interfere with a fair trial." S.D. Fla. L.R. 77.2(a)(7). Likewise, Defendants have not made a sufficient showing that Plaintiffs or the SAOK are acting as mouthpieces for Plaintiffs' counsel, nor has Defendant presented sufficient proof that actions of Plaintiffs' themselves, or their family members, have created a likelihood of precluding a fair trial. Therefore, the undersigned finds that a protective order is not appropriate on the record in this matter.

### C.      FLORIDA BAR RULE 4-3.6

Defendants have also cited Florida Bar Rule 4-3.6 in arguing that a protective order shall issue. The undersigned, however, having not found a reasonable likelihood that Plaintiffs' counsel's actions will interfere with a fair trial, also finds that such actions do not satisfy the burden of "substantial likelihood" under the Florida Bar Rule. Regardless whether a "substantial likelihood" requires at least the same level or a higher level of proof than a "reasonable likelihood" standard, the undersigned does not find the requirements under the Florida Bar Rule have been met, given the analysis above. *See United States v. Brown*, 218 at 427-28 (assuming that a "substantial likelihood" connotes a higher standard than a "reasonable likelihood," but declining to decide this question); *United States v. Scrushy*, No. CR-03-BE-0530-S, 2004 WL 848221, at *4 (N.D. Ala. Apr. 13, 2004) (finding the same). Therefore, the undersigned finds inappropriate a protective order under this standard as well. Furthermore, as subpart (b) of the Florida Bar Rule regarding aid to third parties making statements is predicated on subpart (a), the undersigned finds inappropriate issuing any order addressed to counsel's assistance (or lack thereof) to other parties making such statements.

### D.      MOTION TO REVOKE *PRO HAC VICE* ADMISSIONS

Defendants' Motions include a Motion to Revoke *Pro Hac Vice* Admissions of Plaintiff's counsel, specifically, David Utter and Vanessa Carroll. Defendants seek revocation predicated on these attorneys' violations of the rules and standards in

**Defendants' Motion for Protective Order, analyzed above. Having found no basis for issuing a protective order and no sufficient alternative basis for revoking these admissions, the undersigned finds no basis upon which to revoke these attorneys'** *pro hac vice* **admissions.**

### V.   CONCLUSION

**As suggested above, Defendants are not precluded from raising a motion for protective order on this matter at a later date, should Plaintiffs or Plaintiffs' counsel's actions satisfy the requirements thereof, upon proper conferral and motion. On the state of the current record, however, a protective order is not appropriate.**

**Based upon a review of the record as a whole, it is**

**ORDERED AND ADJUDGED that Defendant's Motions for Protective Order Prohibiting Plaintiffs' Counsel and Plaintiffs from Making Certain Extrajudicial Statements and to Revoke** *Pro Hac Vice* **Admissions of Two Plaintiffs' Counsel (DE # 64) is DENIED.**

**DONE AND ORDERED in chambers in Miami, Florida, on March 31, 2011.**

*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE**

**Copies furnished via CM/ECF to:
The Honorable K. Michael Moore
          United States District Judge
All counsel of record**