## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61902-CIV-MOORE

D.L., et al.

      Plaintiffs,

vs.

YOUTH SERVICES INTERNATIONAL, INC., et al.

      Defendants.

_____/

### ORDER GRANTING IN PART MOTIONS TO DISMISS

THIS CAUSE came before the Court upon Private Defendants' Motion to Dismiss

Plaintiffs' Amended Complaint and Incorporated Memorandum of Law (ECF No. 30); Private

Defendants' Corrected Motion to Dismiss Plaintiffs' Amended Complaint and Incorporated

Memorandum of Law (ECF No. 31); Defendant, Frank Peterman, Jr.'s, Motion to Dismiss

Plaintiffs' Amended Complaint with Incorporated Memorandum of Law (ECF No. 32);

Plaintiffs' Opposition to Private Defendants' Motion to Dismiss (ECF No. 47); Plaintiffs'

Opposition to Defendant Peterman's Motion to Dismiss (ECF No. 49); Private Defendants'

Reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss (ECF No. 52); and Defendant,

Frank Peterman, Jr.'s, Reply Memorandum in Support of Motion to Dismiss Plaintiffs' Amended

Complaint (ECF No. 54).

UPON CONSIDERATION of the Motions, the Responses, the Replies, the pertinent

portions of the record, and being otherwise fully advised in the premises, the Court enters the

following Order.

I.      **BACKGROUND**[1]

This case involves numerous claims relating to the protection of juveniles imprisoned at

Thompson Academy, which is owned by Youth Services International ("YSI"), a private

corporation that contracts with the Department of Juvenile Justice. The facts pertaining to

Plaintiffs D.L., T.P., D.B.1, and C.L. were discussed in detail in the Court's Order Denying the

Amended Motion for Class Certification. (ECF No. 107). To the extent that the Order did not

explain the factual background for D.B.2's claims, it is discussed below.

In February or March 2010, D.B.2, a fifteen year old juvenile who was incarcerated at

Thompson Academy, was working in the laundry room. While working, Presley, an employee of

YSI and a youth counselor at Thompson Academy, placed his hand on his groin and said to

D.B.2, "are you going to suck it?" After D.B.2 repeatedly refused Presley's sexual advances,

Presley removed his penis from his pants and made D.B.2 perform oral sex on him. D.B.2 "spit"

Presley's semen into a rag. D.B.2 then reported the incident to Treva Hutchinson, who was a

Thompson Academy staff member. D.B.2 showed Treva Hutchinson the rag with semen, and the

next day she told D.B.2 to report the sexual abuse to Ferguson, an employee of YSI who acts as

the Facility Administrator of Thompson Academy.

D.B.2 discussed the incident with Ferguson, and during the interview, D.B.2 told

Ferguson that he gave Treva Hutchinson the rag. Ferguson then spoke separately with Ms.

Hutchinson, and Ferguson eventually told D.B.2 not to discuss the incident with anyone. A few

days later, an investigator talked to D.B.2 about the allegations. D.B.2 informed the investigator

---

[1]      The factual background is taken from the Amended Complaint. The Court
reviews the facts in a light most favorable to Plaintiffs.

that Presley was circumcised, and he provided detailed information about Presley's body.

Presley continued to work at Thompson Academy during the investigation.

In August 2010, Ferguson "permitted" Presley to take D.B.2 to the dentist's office, which was not located at Thompson Academy. During the trip, Presley took D.B.2 into a bathroom and removed D.B.2's handcuffs. Presley then asked "are you going to do it?" D.B.2 did not understand. Presley said, "suck it" and made D.B.2 perform oral sex on him.

## II.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir. 1988). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'shown'--'that the pleader is entitled to relief.'" Id. at 1950. A complaint must also contain enough facts to indicate the presence of the required elements. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir. 2007). However, "[a] pleading that offers 'a formulaic recitation of elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 355 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of

3

fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset

Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

## III.    ANALYSIS

Plaintiffs bring claims against numerous defendants for violations of Plaintiffs'

constitutional rights under 42 U.S.C. § 1983 and various state law claims.   As discussed in the

Court's Order Denying the Amended Motion for Class Certification, the § 1983 claims brought

by D.L., C.L., D.B.1, and T.P. are legally moot because they were released from incarceration

and sought only declaratory and injunctive relief.  (ECF No. 107).  Similarly, D.B.2 has been

released from Thompson Academy, and he only requests declaratory relief in Count II.  Hence,

D.B.2 lacks a justiciable controversy, and his claim in Count II must be dismissed as moot.  See

Tucker v. Phyfer, 819 F.2d 1030, 1033 (11th Cir. 1987).  Since D.B.2 has been released from

Thompson Academy, his request for declaratory judgment in Counts IX-XIV are also dismissed

as moot.

Plaintiffs have brought the following causes of action: Plaintiffs' claim for breach of

contract against YSI seeking compensatory and punitive damages and a declaratory judgment

(Count VIII); D.B.2's claim against Presley and Ferguson for the right to be free from excessive

and substantial harm seeking compensatory and punitive damages and a declaratory judgment

(Count IX); D.B.2's claim for negligent supervision against YSI and Ferguson for compensatory

and punitive damages and against Peterman for declaratory relief and compensatory damages

(Count X); D.B.2's claim for intentional infliction of emotional distress against Presley and YSI

seeking compensatory and punitive damages and a declaratory judgment (Count XI);  D.B.2's

claim for intentional infliction of emotional distress against Ferguson and YSI seeking

4

compensatory and punitive damages and a declaratory judgment (Count XII); and D.B.2's claims

for sexual battery against Presley and YSI seeking compensatory and punitive damages and a

declaratory judgment (Counts XIII-XIV). D.B.2 brings this lawsuit against Presley and Ferguson

in their individual and official capacities. Pls.' Am. Compl. ¶¶ 15, 17. D.B.2 is suing Defendant

Peterman only in his official capacity as the Secretary of the Department of Juvenile Justice. Id.

¶ 14.[2]

> A.      Whether the Amended Complaint is a Shotgun Pleading

Defendants argue that the Amended Complaint is a "shotgun" pleading and that it fails to

state a claim. Although the Amended Complaint lacks clarity in particular sections, it is not a

"shotgun" pleading. The Amended Complaint is distinguishable from the complaint in Delgado

v. Miami-Dade County cited by Defendants. 2005 WL 3871599, at *1 (S.D. Fla. Dec. 21, 2005).

There, each claim incorporated the previous claims' allegations. Id. As explained in Delgado,

"[t]he Eleventh Circuit Court of Appeals defines a shotgun complaint as containing 'several

counts, each one incorporating by reference the allegations of its predecessors, leading to a

situation where most of the counts (i.e. all but the first) contain irrelevant factual allegations and

legal conclusions.'" Id. (citing Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.,

305 F.3d 1293, 1295-96 (11th Cir. 2002)). Here, Plaintiffs allege their factual allegations

(paragraphs 1-97) in each claim. However, Plaintiffs do not include the allegations of the

previous claim in each count. Thus, it is not a "shotgun" pleading.

---

[2]      At the time this lawsuit was filed, Frank Peterman, Jr. was the Secretary of the
Florida Department of Juvenile Justice. The current Secretary of the Florida Department of
Juvenile Justice is Wansley Walters. This Court will refer to Peterman as the defendant in this
lawsuit to be consistent.

B.     Prison Litigation Reform Act and Exhaustion of Remedies

Defendants seeks to dismiss the remaining 42 U.S.C. § 1983 claim because D.B.2 did not

exhaust all of his remedies pursuant to the Prison Litigation Reform Act ("PLRA"). Section

1997e(a) of the PLRA states that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C.A. § 1997e(a).   "There is no question that exhaustion is mandatory under

the PLRA and that unexhausted claims cannot be brought in court." Jones v. Block, 549 U.S.

199, 200-01 (2007) (citation omitted).   Despite this requirement, section 1997e(a) does not apply

to D.B.2's claims because he was not a "prisoner" at the time he filed this lawsuit. Morgan v.

Fulton County Sheriff's Dep't., 2007 WL 1810217, at *2 (N.D. Ga. Jun 21, 2007) (explaining

that the district court "must look at the . . . filing of the action or when the action is brought in

order to determine" whether exhaustion is required) (citing Harris v. Garner, 216 F.3d 970 (11th

Cir. 2000)).   As such, D.B.2 is not required to show exhaustion of his administrative remedies.

C.     Eleventh Amendment Immunity as to Peterman

D.B.2 is suing Peterman in "his official capacity as secretary of DJJ." Pls.' Am. Compl. ¶

14.   Due to some of Plaintiffs' claims being moot, the only remaining § 1983 claim is Count IX.

Peterman is not a defendant in Count IX.   Therefore, this Court will not discuss Peterman's

sovereign immunity defense with regard to the § 1983 claims.

In Count X, D.B.2 brings a claim for negligent supervision under Florida law against

Peterman.   By suing Peterman in his official capacity, D.B.2 is effectively suing the state of

Florida and brings a state tort claim against a Florida agency in federal court.   Peterman claims

immunity pursuant to the Eleventh Amendment.  The state of Florida has not waived its

immunity from state torts brought in federal court.  See Terrell v. U.S., 783 F.2d 1562, 1565

(11th Cir. 1986) (reversing district court's judgment against a Florida agency based upon a state

tort claim brought in federal court and finding "that although Florida has waived its immunity

from tort actions filed in state court, Florida has not waived its immunity from tort suits in

federal fora").  The Amended Complaint does not allege that the state of Florida has waived its

immunity in this matter, and Peterman argues that D.B.2 cannot proceed on his tort claim against

the state of Florida in federal court.  See Nilas v. City of Florida City, 2008 WL 2332003, at *4

(S.D. Fla. June, 4 2008) (explaining that "[w]hile Fla. Stat. § 768.28 waives Florida's sovereign

immunity from tort liability in state court, it clearly does not waive Florida's immunity from tort

suits in 'federal fora.'") (citing Terrell, 783 F.2d at 1565).[3]  In Plaintiffs' Response, D.B.2 stated

that he "does not object to dismissal of his claim for damages against Defendant Peterman, and

respectfully seeks leave of this Court to amend the Complaint accordingly."  Pls.' Opp. to Def.

Pet.'s Mot. to Dis., at p. 2, n.2.  In Count X, D.B.2's claim for declaratory relief is moot and he

has withdrawn his claim for damages against Peterman.  Thus, D.B.2 no longer seeks relief from

Peterman in Count X, and the claim against Peterman must be dismissed.

    D.    Count VIII: Breach of Contract

Plaintiffs have brought a claim for breach of contract against YSI seeking declaratory

judgment, compensatory damages, and punitive damages.  Plaintiffs claim that they were

---

[3]    Florida Statute § 768.28(18) states that, "[n]o provision of this section, or of any other section of the Florida Statutes, whether read separately or in conjunction with any other provision, shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court. . . ."

intended third-party beneficiaries of a contract between YSI and DJJ. Plaintiffs allege that YSI

breached the contract by failing to provide the juveniles supervision, protection, personal safety,

nutritious meals, and comprehensive medical care.

To be a third-party beneficiary of a contract, Plaintiffs "must establish it was an intended

third-party beneficiary of it." Esposito v. True Color Enters. Constr., Inc., 45 So. 3d 554, 555

(Fla. 4th DCA 2010). A plaintiff cannot enforce the terms of a contract "where that person

receives only an incidental or consequential benefit from the contract." Id. (quoting Caretta

Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So. 2d 1028, 1030-31 (Fla. 4th DCA 1994)).

To be an intended third-party beneficiary, the parties to the contract must "clearly express" the

"intent to primarily and directly benefit the third party." Caretta Trucking, 647 So. 2d at 1031.

In determining whether the contracting parties intended to benefit a third-party, Florida law

analyzes the "nature or terms of a contract." Esposito, 45 So. 3d at 557 (citing Jenne v. Church

& Tower, Inc., 814 So. 2d 522, 524 (Fla. 4th DCA 2002)) (citation omitted).

Defendant YSI contends that a clause in the contract between DJJ and YSI "disavows"

any claims to third-party beneficiary rights. Thus, YSI argues that Plaintiffs are at most

incidental beneficiaries of the contract. The clause states that "[t]his Contract is neither intended

nor shall it be construed to grant any rights, privileges or interest in any third party without the

mutual written agreement to the parties hereto." Priv. Defs.' Mot. to Dis. Pls.' Am. Compl.

(ECF No. 30), p.18. In addition to this clause, there is a section in the contract entitled "Youth to

be Served," which has a subsection entitled "Description of the Youth to be Served." Pls.' Am.

Compl. (ECF No. 24-1), p. 14. In that subsection, the contract states in part that:

> The Program shall provide residential program services for 154 boys (86 moderate
> risk boys between the ages of 13-18 who require Behavioral Health Overlay Services
> (BHOS) and 68 moderate risk boys between the ages of 13 to 18 who require
> Substance Abuse Treatment Services funded by BHOS), who are committed to the
> Department after being assessed and classified as a moderate-risk to public safety and

are in need of Behavior Overlay Services or Substance Abuse Treatment Services.

Id.

Plaintiffs argue that this provision, along with others, supports that they were third-party beneficiaries of the contract. Due to deficient pleadings, this Court is unable to determine whether Plaintiffs are third-party beneficiaries. Even if this Court found that Plaintiffs were intended beneficiaries of the contract, Plaintiffs have not properly asserted a breach of this contract. Under Florida law, to prove a claim for breach of a third-party beneficiary contract, a plaintiff must show:

> (1) a contract between A and B
> (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit C, the third party (or a class of persons to which that party belongs);
> (3) breach of that contract by either A or B (or both); and
> (4) damages to C resulting from the breach.

Caretta Trucking, 647 So.2d at 1031.

Even in a light most favorable to Plaintiffs, they have failed to allege facts showing that YSI breached its contract with DJJ or that Plaintiffs suffered any damages. This claim broadly seeks damages on behalf of "All Plaintiffs." See Pls.' Opp. to Priv. Defs.' Mot. to Dis. (ECF No. 47), p. 2. Plaintiffs have neither alleged facts showing how YSI breached its contract to "All Plaintiffs" nor have they pled facts demonstrating the damages incurred to "All Plaintiffs."

The Amended Complaint makes a blanket assertion that YSI failed "to provide Plaintiffs with these services . . . ." Pls.' Amend. Compl. ¶ 114. By services, Plaintiffs refer to "supervision, protection, and personal safety; nutritious meals; comprehensive medical care; and individualized, evidence-based treatment and rehabilitation." Pls.' Am. Compl. ¶ 37. At the outset, it is unclear if by "All Plaintiffs," Plaintiffs are referring to C.L., T.P., D.L., D.B.1, and D.B.2 or if "Plaintiffs" includes other juveniles who were incarcerated at Thompson Academy.

9

The evidence of when juveniles were incarcerated directly affects whether Plaintiffs were third-party beneficiaries at the time YSI executed its contract with DJJ. For instance, Plaintiffs who were incarcerated and released prior to the execution of the contract could not bring a lawsuit as third-party beneficiaries because they were clearly not intended beneficiaries of the contract. Plaintiffs Amended Complaint fails to provide this Court with dates of when "All Plaintiffs" were admitted into Thompson Academy and the duration of their incarceration. Moreover, Plaintiffs must clearly allege who is asserting the breach of contract claim and how the breach caused damages to said Plaintiffs. These pleadings are insufficient as to the breach of contract because this Court must speculate as to who are the Plaintiffs, how the contract was breached as to "All Plaintiffs," and what, if any, damages were caused by such breach to these unspecified Plaintiffs.

With regard to damages, Plaintiffs have asserted none in their breach of contract claim. The Amended Complaint does not refer to any damages caused to Plaintiffs and provides no factual evidence to support that such damages were caused by a breach of contract between YSI and DJJ. Thus, these allegations fail to meet the basic pleading requirements. Due to the deficient pleadings, this Court will not address the issue of punitive damages requested for the alleged breach of contract.

Plaintiffs will have five days from the issuance of this order to amend their pleadings to properly allege which Plaintiffs are purported third-party beneficiaries of the contract, the breach caused by YSI, and Plaintiffs' damages. Plaintiffs will only be permitted to amend their complaint as to this count. If Plaintiffs fail to properly amend their complaint, then this claim will be dismissed with prejudice.

E.      Count IX: Excessive Harm - Eighth Amendment Violation

In Count IX, D.B.2 brings a cause of action under 42 U.S.C. § 1983 against Presley and

Ferguson for an alleged violation of his right to be free from substantial and excessive harm.

This claim stems from a staff-on-youth sexual assault allegedly in violation of his Eighth

Amendment right to be free from cruel-and-unusual punishment and his Fourteenth Amendment

right to substantive due process.

Defendants contend that the Eighth Amendment applies to D.B.2 because he is an

adjudicated delinquent.  If the Eighth Amendment applies to D.B.2, then the "more-specific-

provision rule" forbids a substantive due process analysis under the Fourteenth Amendment for

the same challenged actions.  See Graham v. Neel, 2010 WL 4284527, at *2 (N.D. Fla. 2010)

(stating "it is well settled that if a constitutional claim is covered by a specific constitutional

provision, such as the Eighth Amendment, the claim must be analyzed under the standard

appropriate to that specific provision, not under the rubric of substantive due process under the

Fourteenth Amendment").  Defendants, therefore, argue that this claim should be analyzed under

the Eighth Amendment, and not for substantive due process violations pursuant to the Fourteenth

Amendment.

Plaintiffs erroneously rely on H.C. ex rel. Hewett v. Jarrard for the proposition that the

Fourteenth Amendment, not the Eighth Amendment, applies to D.B.2 because he is a juvenile.

786 F.2d 1080, 1085 (11th Cir. 1986).  In Jarrard, the plaintiff was a pretrial detainee.  Id.  If

D.B.2 was a pretrial detainee, then the Fourteenth Amendment Due Process Clause, not the

Eighth Amendment, would apply to this claim.  See Goebert v. Lee County, 510 F.3d 1312, 1326

(11th Cir. 2007) (stating that "the Fourteenth Amendment Due Process Clause, not the Eighth

Amendment prohibition on cruel and unusual punishment, governs pretrial detainees . . . .").

11

Here, D.B.2 was not a pretrial detainee. Rather, he was an adjudicated delinquent, and therefore, Jarrard is distinguishable from this case. 786 F.2d at 1085.

In Betts v. New Castle Youth Development Center, a juvenile delinquent brought § 1983 claims against the jail facility for injuries caused during a football game while he was incarcerated. 621 F.3d 249, 252-54 (3d Cir. 2010). The Third Circuit affirmed the district court's dismissal of the juvenile plaintiff's Eighth Amendment claims and then barred the Fourteenth Amendment due process claims because of the "more-specific-provision rule." Id. at 260. In quoting the Supreme Court, the Third Circuit explained that:

> the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified.

Id. (quoting Whitley v. Albers, 475 U.S.312, 327 (1986)).

The Third Circuit held that "[b]ecause these allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment, we hold that the more-specific-provision rule forecloses plaintiff's substantive due process claims." Betts, 621 F.3d at 261. Similarly, the claims here "fit squarely" under the Eighth Amendment and "foreclose" substantive due process claims brought under the Fourteenth Amendment pursuant to the "more-specific-provision rule." Id.

In D.S. ex. rel. Stinson v. Cnty. of Montgomery, Ala., a juvenile, who was being detained on charges, was allegedly raped by another juvenile. 286 Fed. Appx. 629 (11th Cir. 2008). In determining whether there was a constitutional violation, the Eleventh Circuit applied the Fourteenth Amendment instead of the Eighth Amendment but noted:

> [b]ecause [plaintiff] was in a juvenile detention facility on criminal charges rather than following a criminal conviction, the deliberate indifference standard arises from the Fourteenth Amendment's Due Process Clause instead of the Eighth

12

Amendment's Cruel and Unusual Punishment Clause. However, 'the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments.'

Stinson, 621 F.3d at 634, n. 5 (quoting Marsh v. Butler Cty., 268 F.3d 1014, 1024, n. 5 (11th Cir. 2001)). Moreover, in McReynolds v. Ala. Dep't of Youth Services, et al., the Eleventh Circuit applied an Eighth Amendment analysis to a juvenile detainee's excessive force claim. 204 Fed. Appx. 819, at *2 (11th Cir. 2006) (applying an Eighth Amendment analysis to a § 1983 claim asserting excessive force where a juvenile in a detention center was beaten by guards).[4] Thus, the Eighth Amendment right to be free from cruel-and-unusual punishment applies to an adjudicated delinquent such as D.B.2. As such, the "more-specific-provision rule" forecloses a substantive due process analysis under the Fourteenth Amendment, and this Court must analyze this claim pursuant to the Eighth Amendment.

"Prison officials violate the Eighth Amendment through 'the unnecessary and wanton infliction of pain.'" Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006) (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)). The Eleventh Circuit has explained that "repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment." Id. (citations omitted). "[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society." Id. (quoting Boddie v. Schnieder, 105 F.3d 857, 860-61 (2d Cir. 1997)) (citation and quotation omitted). To establish an Eighth Amendment violation, "there is an objective component of the inquiry, which requires that the injury be 'objectively, sufficiently serious,' and a subjective component, which requires the prison official have a 'sufficiently

---

[4]     The Court notes that Stinson and McReynolds are unpublished opinions. In accordance with Eleventh Circuit Rule 36-2, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

culpable state of mind.'" Boxer X, 437 F.3d at 1111 (citing Boddie, 105 F.3d at 861; Farmer, 511 U.S. at 834).

As to Presley, D.B.2 alleges that Presley forced him to perform oral sex on two occasions. Forcing a fifteen-year-old to perform oral sex on two occasions is objectively sufficiently serious, and Presley, who allegedly acted intentionally and maliciously, had a sufficiently culpable state of mind.  Accordingly, D.B.2 has properly asserted a claim for an Eighth Amendment violation against Presley.

In addition, D.B.2 appears to bring a claim against Ferguson under the theory of respondeat superior or vicarious liability for being a supervisor.  D.B.2 has not alleged that Ferguson was personally involved with the sexual abuse in his "Statement of Facts."  However, in Count IX, the Amended Complaint states that "Ferguson intentionally and maliciously violated Plaintiff D.B.2's right to be free from substantial and excessive harm."  Pls.' Am. Comp. ¶ 115. The Amended Complaint does not state what acts Ferguson "intentionally and maliciously" conducted, and, therefore, this claim appears to be based upon respondeat superior.

"It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994)).  However, the Eleventh Circuit has explained that:

> [s]upervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficiently to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

14

Id. (quoting <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990)). In addition, "the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights" or if the allegations show that "the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Id. (internal quotation marks and citation omitted).

Since Ferguson did not participate in the sexual battery, the issue is whether Ferguson's knowledge of the first incident and then permitting Presley to transport D.B.2 to the dentist's office approximately seven months later constitutes a causal connection to the second sexual abuse. In a light most favorable to D.B.2, Ferguson knew of the first allegation of sexual abuse. Indeed, there was an investigation into the matter.

However, the Amended Complaint is devoid of any factual allegations demonstrating widespread sexual abuse at Thompson Academy. The first sexual battery occurred in February or March 2010 and there was no other sexual abuse alleged in the Amended Complaint until the second incident in August 2010. For the purpose of this analysis, D.B.2 only alleges that Ferguson knew of one isolated occurrence of sexual abuse at the time Presley brought D.B.2 to the dentist's office. While any report of sexual abuse is serious and unfortunate, one report of sexual battery cannot be considered "rampant." Although such allegations make out a viable state tort claim for negligent supervision (see <u>infra</u> Section F), Ferguson's knowledge of one isolated incident that was previously investigated does not rise to "widespread abuse" that 'must be obvious, flagarant, rampant, and of continued duration' to make him liable under a § 1983

respondeat superior claim.  See Gary ex. rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (citing Hartley, 193 F.3d at 1269).

In addition, there is no custom or policy that caused the constitutional violation, Ferguson did not direct Presley to act unlawfully, and nothing is alleged demonstrating that Ferguson knew Presley would act unlawfully in August 2010 and failed to prevent it.  Accordingly, D.B.2's claim against Ferguson is dismissed.

F.    Count X: Negligent Supervision in Violation of Florida Law

Plaintiff D.B.2 has brought a claim for negligent supervision against Defendants YSI, Ferguson, and Peterman.[5]  Plaintiff D.B.2 seeks compensatory and punitive damages against Defendants YSI and Ferguson.  D.B.2 also seeks to impose vicarious liability against YSI for the acts of Presley.

To prove a claim for negligent supervision under Florida law, a plaintiff must demonstrate that "an employer (1) knows or should know about the offending employee's unfitness and (2) fails to take appropriate action."  Martinez v. Pavex Corp., 422 F. Supp. 2d 1284, 1298 (M.D. Fla. 2006).  A claim for negligent supervision "must be based on an injury resulting from a tort which is recognized under common law."  Id. (citing Scelta v. Delicatessen Support Serv., Inc., 57 F. Supp. 2d. 1327, 1348 (M.D. Fla. 1999)).  Since it is a cause of action for negligence, "the conventional elements of duty, breach, causation, and damages must be shown . . . ."  Samedi v. Miami-Dade Cty., 134 F. Supp. 2d 1320, 1353 (S.D. Fla. 2001).

According to the Amended Complaint, Ferguson had a duty to D.B.2.  Ferguson breached that duty by allowing Presley to supervise D.B.2 after learning in February or March of 2010 that Presley forced D.B.2 to perform oral sex on him.  Therefore, Ferguson knew or should have

---

[5]    This cause of action was previously dismissed as to Peterman.  See Section C.

known that Presley was unfit to supervise D.B.2. Ferguson allegedly continued to allow Presley

to work at Thompson Academy and Ferguson permitted Presley to supervise and transport D.B.2

to an off-site location. Due to this breach, Presley committed a sexual battery against D.B.2

again. Injury resulted from the incident, and there is a tort recognized under common law for

Presley's alleged actions. Accordingly, the Motion to Dismiss is denied as to Ferguson.

In addition, D.B.2 brings a respondeat superior claim against YSI for the actions of

Ferguson. An employer could be found liable under the theory of respondeat superior if its

employee acted within the scope of his employment. "Under Florida law, an action falls within

the scope of employment if the conduct: (1) is of the kind the employee was employed to

perform; (2) occurred within the time and space limits of the employee's employment; and (3)

was activated at least in part by a purpose to serve the employment." United Techs. Corp. v.

Mazer, 556 F.3d 1260, 1271 (11th Cir. 2009). Here, Ferguson, as the Facility Administrator of

Thompson Academy, was employed to supervise staff, including Presley. Ferguson allowed

Presley to continue working at Thompson Academy and supervise juveniles after he was accused

of sexual abuse. Although the Amended Complaint does not explain Ferguson's purpose in

allowing Presley to remain an employee of Thompson Academy, it is clear that Ferguson allowed

Presley to supervise D.B.2 at the dentist's office in order to serve his employer. Accordingly, the

Motion to Dismiss is denied as to YSI.

G.    Counts XI & XII: Intentional Infliction of Emotional Distress

In Count XI, D.B.2 brings a claim for intentional infliction of emotional distress seeking

declaratory, compensatory, and punitive damages against Presley and YSI for the first alleged

sexual battery. In Count XII, D.B.2 asserts a cause of action for intentional infliction of

emotional distress against Ferguson and YSI seeking a declaratory judgment and compensatory

and punitive damages based upon the second incident.

Under Florida law, to prove a claim for intentional infliction of emotional distress, a plaintiff must show "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." Thomas v. Hosp. Bd. of Dir. of Lee Cnty., 41 So. 3d 246, 256 (Fla. 2d DCA 2010) (citing Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 594 (Fla. 2d DCA 2007)). In addition, a defendant's actions must be "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278 (Fla. 1988).

In Count XII, D.B.2 has not alleged that Ferguson intentionally committed any act. Instead, D.B.2 claims that Ferguson failed to prevent Presley from committing a sexual assault against Plaintiff D.B.2. Specifically, D.B.2 alleges that Ferguson "allowed Defendant Presley to transport D.B.2 to an off-campus dental appointment," which resulted in D.B.2 being sexually assaulted. Pls.' Am. Compl. ¶ 122. These allegations assert negligence but do not rise to the mens rea needed to assert a cause of action for an intentional infliction of emotional distress. See Elders v. United Methodist Church, 793 So. 2d 1038, 1042 (Fla. 3d DCA 2001) (finding that allegations of failure to supervise were legally insufficient to establish a claim for intentional infliction of emotional distress). Similar to Elders, "the plaintiffs' allegations boil down to a claim of negligent failure to supervise" and "[t]his is legally insufficient to establish a claim for intentional infliction of emotional distress." Id. (citation omitted). As such, Ferguson's Motion to Dismiss is granted as to Count XII. Hence, the claim against YSI under the theory of respondeat superior, in Count XII, must also be dismissed.

In Count XI, D.B.2 has alleged facts to prove a claim for intentional infliction of

18

emotional distress against Presley.  Presley deliberately inflicted mental suffering on D.B.2 by having him perform oral sex on two occasions, it was outrageous conduct, the conduct caused him to incur emotional distress, and that distress was severe.  However, the claim against YSI is dismissed because such actions are not in the scope of Presley's employment, and nothing is alleged showing that Presley was motivated in part to serve YSI when he comitted the act.  See infra Counts XIII-XIV.  Accordingly, Defendants' Motion to Dismiss Count XI is granted as to YSI and denied as to Presley.

H.    Counts XIII & XIV: Sexual Battery in Violation of Florida Law

In Counts XIII and XIV, D.B.2 seeks a declaratory judgment and compensatory and punitive damages against Presley and YSI for two incidents of sexual battery allegedly conducted by Presley in violation of Florida law.  Count XIII is based upon the incident where Presley allegedly had Plaintiff D.B.2 perform oral sex on him in the laundry room at Thompson Academy.  Count XIV claims Presley made Plaintiff D.B.2 perform oral sex on him in a dentist's office restroom located off-site of Thompson Academy.  YSI argues that it is not liable under the theory of respondeat superior for the sexual battery in both instances.

"Under the doctrine of respondeat superior, an employer cannot be held liable for the tortious or criminal acts of an employee, unless the acts were committed during the course of the employment and to further a purpose or interest, however excessive or misguided, of the employer." Iglesia Cristiana La Casa Del Senor v. L.M., 783 So. 2d 353, 356 (Fla. 3d DCA 2001) (citing Nazareth v. Herndon Ambulance Serv., Inc., 467 So. 2d 1076, 1078 (Fla. 5th DCA 1985)).  As stated previously, under Florida law, to prove an employee acted within the scope of his employment, D.B.2 must show that "(1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or

19

required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master." Id. (citation omitted). "Generally, sexual assaults and batteries by employees are held to be outside the scope of an employee's employment, and therefore, insufficient to impose vicarious liability on the employer." Id. at 357 (quoting Nazareth, 467 So. 2d at 1078). However, there may be liability "where the tortfeasor was assisted in accomplishing the tort by virtue of the employer/employee relationship." Id. (citations omitted). In analyzing whether an act is within the scope of employment, "the Eleventh Circuit focuses on the kind of conduct involved in the act while the Florida Supreme Court focuses on the employee's motivation behind the act." Hemmings v. Jenne, 2010 WL 4005333, at *4 (S.D. Fla. Oct. 12, 2010) (citing Roth v. Lawrence, 2010 WL 2162900, at *1 (S.D. Fla. May 26, 2010)).

Examining the facts in the light most favorable to D.B.2, Presley sexually assaulted D.B.2 within the time and space limits authorized and required as part of Presley's employment with YSI. The first incident occurred while Presley supervised D.B.2 in the laundry room at Thompson Academy, and the second incident occurred when Presley transported D.B.2 to the dentist's office. Hence, the conduct occurred within the time and space limits authorized by his work.

However, D.B.2 has not shown that such conduct is of the kind that Presley was employed to perform. Moreover, Presely's actions were clearly not motivated by a purpose to serve YSI. See Hemmings, 2010 WL 4005333 at *4 (defendant's actions were not in the scope of employment because he was not motivated to serve his employer where defendant forced plaintiff "to perform oral sex on him on several occasions, repeatedly coerced her into other sexual contacts, harassed and intimidated her, and attempted to force her to have sex with him"); see also Rivera v. Aaron Rents, Inc., 2008 WL 638353, at *2 (M.D. Fla. 2008). D.B.2 has failed

to show under either the Eleventh Circuit or Florida law that Presley was acting within the scope

of his employment. Thus, Counts XIII and XIV should be dismissed as to YSI.

D.B.2 has set forth a viable claim against Presley for sexual battery in Counts XIII and

XIV. Accordingly, Counts XIII and XIV are not dismissed as to Presley.

I.      Punitive Damages

In the remaining causes of action, D.B. seeks punitive damages for state law violations

against YSI and Ferguson in Count X and against Presley in Counts XI, XIII, and XIV. D.B.2

also requests punitive damages in Count IX pursuant to § 1983 against Presley. Defendants seek

to have punitive damages dismissed or stricken from the state law claims for not complying with

Florida Statute § 768.72(1). Florida Statute § 768.72(1) states in part:

> [i]n any civil action, no claim for punitive damages shall be permitted unless there
> is a reasonable showing by evidence in the record or proffered by the claimant which
> would provide a reasonable basis for recovery of such damages. The claimant may
> move to amend her or his complaint to assert a claim for punitive damages as
> allowed by the rules of civil procedure.

Fl. Stat. § 768.72.

The Eleventh Circuit has held "that the pleading rules set forth in Federal Rules of Civil

Procedure 8(a)(3) preempts [Florida Statute] § 768.72's requirement that a plaintiff must obtain

leave from the court before including a prayer for punitive damages." Porter v. Ogden, Newell &

Welch, 241 F.3d 1334, 1340 (11th Cir. 2001) (citations omitted). "Florida courts do not require

a fact intensive investigation into the merits. Instead the Florida courts entertain the punitive

damage issue by way of a motion to dismiss or a motion to strike . . . ." Id. A plaintiff "must

plead specific acts committed by a defendant" and not merely allege "conclusory allegations to

recover punitive damages." Id. (citations omitted).

With regard to the state law claims, Plaintiffs have alleged specific facts supporting

D.B.2's request for punitive damages against Presley. As such, the punitive damages will not be dismissed as to Presley. However, in Count X, D.B.2 has not alleged facts demonstrating that Ferguson or YSI acted with "intentional misconduct" or "gross negligence." Rather, D.B.2 asserts facts demonstrating that Ferguson and YSI were merely negligent, which does not warrant punitive damages. Accordingly, punitive damages are dismissed as to Ferguson and YSI in Count X. Finally, in Count IX, D.B.2's request for punitive damages against Presley is not dismissed.

     J.     <u>The Claims Not Dismissed</u>

     The following causes of action remain. In Count IX, D.B.2 brings a claim against Presley for a violation of his Eighth Amendment right under 42 U.S.C. § 1983 seeking compensatory and punitive damages. In Count X, D.B.2 asserts a claim against Ferguson and YSI for negligent supervision in violation of Florida law requesting compensatory damages. In Count XI, D.B.2 brings suit against Presley for intentional infliction of emotional distress asking for compensatory and punitive damages. In Counts XIII and XIV, D.B.2 asserts a cause of action against Presley for compensatory and punitive damages.

**IV.    CONCLUSION**

     In light of the foregoing, it is

     ORDERED AND ADJUDGED that Private Defendant's Corrected Motion to Dismiss Plaintiffs' Amended Complaint and Incorporated Memorandum of Law (ECF No. 31) and Defendant, Frank Peterman, Jr.'s, Motion to Dismiss Plaintiffs' Amended Complaint with Incorporated Memorandum of Law (ECF No. 32) are GRANTED IN PART.

     (a) Counts I-VII are dismissed as legally moot.

     (b) In Count VIII, Plaintiffs must amend their Amended Complaint to properly state a

claim within five (5) days of the issuance of this order.

(c) In Count IX, the Motions to Dismiss is GRANTED IN PART.  The claim against Ferguson is dismissed, but the claim against Presley for punitive and compensatory damages is not dismissed.  The request for a declaratory judgment is dismissed as moot.

(d) In Count X, the Motion to Dismiss is GRANTED as to Peterman and DENIED as to Ferguson and YSI.  The relief sought for punitive damages is dismissed, and the compensatory damages are not dismissed.

(e) In Count XI, the Motion to Dismiss is GRANTED as to YSI and DENIED as to Presley.  The relief sought for a declaratory judgment is dismissed as moot and the punitive and compensatory damages are not dismissed.

(f) In Count XII, the Motion to Dismiss is GRANTED.

(g) In Count XIII, the Motion to Dismiss is GRANTED as to YSI and DENIED as to Presley.  The request for a declaratory judgment is dismissed as moot, and the compensatory and punitive damages remain.

(h) In Count XIV, the Motion to Dismiss is GRANTED as to YSI and DENIED as to Presley.  The request for a declaratory judgment is dismissed as moot, and the compensatory and punitive damages are not dismissed.

DONE AND ORDERED in Chambers at Miami, Florida, this 21st day of April, 2011.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:      Counsel of record

23